561 P.2d 935
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Danny Ray KENDALL,
Defendant-Appellant.**

No. 2608.

Court of Appeals of New Mexico.

Jan. 4, 1977.

Toney Anaya, Atty. Gen., Suzanne Tanner, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jan A. Hartke, Chief Public Defender, Reginald J. Storment, Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

WOOD, Chief Judge.

Convicted of fourteen felonies and one misdemeanor, defendant appeals. Statutory references are to N.M.S.A.1953 (2d Repl. Vol. 6 and the 1975 Supp.) unless otherwise noted. The fifteen crimes were: (1) four kidnappings which were second degree crimes (Counts I, II, XII and XIII), § 40A–4–1, supra; (2) three armed robberies which were second degree crimes (Counts III, IV and XV), § 40A–16–2, supra; (3) two aggravated batteries which were third degree crimes (Counts V and VI), § 40A–3–5, supra; (4) two aggravated assaults which were fourth degree crimes (Counts VII and XI), § 40A–3–2, supra; (5) two aggravated burglaries which were second degree crimes (Counts VIII and IX), § 40A–16–4, supra; (6) one criminal sexual penetration, a second degree crime (Count X), § 40A–9–21(B), supra; and (7) one attempt to unlawfully take a motor vehicle, a misdemeanor (Count XIV), § 40A–28–1, supra, § 64–9–4, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 2, Supp. 1975) and § 64–10–8, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 2).

The issues involve: (1) self-incrimination; (2) contentions not supported by the record; (3) instruction on intent; (4) elements of criminal sexual penetration; (5) instruction on use of a firearm; and (6) the sentences imposed.

*Self-Incrimination*

■ The privilege against self-incrimination is the privilege of not being a witness against oneself. Constitution of the United States, Amend. V; Constitution of New Mexico, Art. II, § 15. See *State v. Zamora*, 84 N.M. 245, 501 P.2d 689 (Ct.App.1972); *State v. Watson*, 82 N.M. 769, 487 P.2d 197 (Ct.App.1971).

■ The trial court ordered a psychiatric examination of defendant to determine his mental condition. This court-ordered examination did not violate the privilege against self-incrimination *United States v. Cohen*, 530 F.2d 43 (5th Cir. 1976); *State v. Phillips*, 245 Or. 466, 422 P.2d 670 (1967); Annot., 32 A.L.R.2d 434 at 444; 8 Wigmore, Evidence, § 2265 (McNaughton rev. 1961).

Defendant claims that he had a right not to answer questions asked during this examination, see *Shepard v. Bowe*, 250 Or. 288, 442 P.2d 238 (1968), that he was not adequately advised of this right, that he made communications to the examiner which were incriminatory and these communications were testified to at trial. The answer is factual; no incriminating statements made by defendant in connection with the psychiatric examination were testified to at the trial.

*Contentions Not Supported by the Record*

The following two contentions are not supported by the record.

■ 1. Count XIII charged the kidnapping of Martha with the intent to hold her to service against her will. Section 40A–4–1(A)(3), supra. Defendant contends the evidence was not sufficient to show such an intent. There was evidence that defendant bound and gagged Martha and her mother, raped the mother and stated that Martha and her mother were to take defendant out of state, to Oklahoma. The evidence of intent was sufficient.

■ 2. During cross-examination of the psychiatrist called by the State on rebuttal, the State objected to a defense question. The objection was sustained. The defense stated it wanted "to make an offer of proof on the question that I asked". The trial court stated that defendant could make the tender after the jury was excused for the night. Defendant did not object to this procedure. See *State v. Snow*, 84 N.M. 399, 503 P.2d 1177 (Ct.App.1972). After the jury was excused, the question was repeated and the witness answered. Thereafter defense counsel stated "we would like to make an offer of proof with regard to other questions to which objections were sustained." The trial court ruled it was

"too late now." Defendant claims this ruling of the trial court denied him the right to put on a defense, to confront witnesses and to have effective assistance of counsel, because it precluded a "complete offer of proof."

We assume defendant's belated request to offer proof goes to the psychiatrist and not other witnesses, otherwise the contention is meaningless. With the exception of the one question and answer referred to above, at the time objections were sustained, defendant did not ask to make an offer of proof. See Evidence Rule 103(a)(2). Defendant's contention goes to unidentified "other questions" and with no theory of admissibility stated as to the unidentified questions. See *State v. Quintana*, 87 N.M. 414, 534 P.2d 1126 (Ct.App.1975), cert. denied, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); *State v. Santillanes*, 86 N.M. 627, 526 P.2d 424 (Ct.App.1974). We cannot say the trial court erred in not permitting defendant to put on a general offer of proof going to an unidentified subject matter.

*Instruction on Intent*

There are two contentions concerning intent instructions.

■ 1. Several of the counts charged specific intent crimes. U.J.I.Crim. 41.11 is an instruction on inability of a defendant to form a specific intent because of the use of alcohol or drugs or because he suffered from a mental disease or disorder. The evidence justified such an instruction in this case as to each of the specific intent crimes charged.

Defendant requested a separate intent instruction for each specific intent crime charged. These requested instructions were refused.

The trial court did instruct on specific intent. It gave a separate instruction stating the elements for each of the counts charging kidnapping (four of them). It then gave the equivalent of U.J.I.Crim. 41.-11, making that one instruction applicable to the specific intent involved in the four kidnapping charges and identifying those charges in the intent instruction. This procedure was followed as to the other specific intent crimes; that is, the jury was instructed as to each count of a particular crime and these instructions were followed by one instruction as to the specific intent required for that particular crime.

In addition, the trial court instructed on the basis of U.J.I.Crim. 41.11 concerning alcohol, drugs and mental disease or disorder. This instruction was applied to the specific intent crimes by naming them in the instruction.

Defendant claims these instructions were error for two reasons. First, he asserts the procedure followed violated the Use Note to U.J.I.Crim. 41.11 which states: "[T]he instruction should follow the elements instruction for the crime or crimes with the intent element." The asserted violation is in not giving a separate intent instruction as to each kidnapping count (for example), but in giving one intent instruction applicable to all of the kidnapping counts. Second, he asserts that he was prejudiced because the method followed by the trial court in instructing on specific intent was confusing.

Defendant's contentions border on the frivolous. There were no objections to the specific intent instructions given. R.Crim.P. 41; N.M.Crim.App. 308. The application of a specific intent instruction to several counts involving the same specific intent crime was not a substantial modification of U.J.I.Crim. 41.11. See U.J.I.Crim. General Use Note. The procedure followed by the trial court tended to simplify the instructions and avoid confusion.

■ 2. Voluntary intoxication from use of alcohol or drugs is not a defense to the question of whether a defendant had a general criminal intent. *State v. Roybal*, 66 N.M. 416, 349 P.2d 332 (1960); *State v. Scarborough*, 55 N.M. 201, 230 P.2d 235 (1951); *State v. Crespin*, 86 N.M. 689, 526 P.2d 1282 (Ct.App.1974); see *State v. Tapia*, 81 N.M. 274, 466 P.2d 551 (1970).

■ Defendant requested instructions which would have directed the jury to con-

sider the effect of intoxication on defendant's ability to form a general criminal intent. He claims refusal of these requests was error.

Defendant's argument is that—(1) since voluntary intoxication is not a defense to the existence of a general criminal intent, a general criminal intent is always presumed from the doing of the prohibited act; (2) conclusive presumptions are unconstitutional; (3) general criminal intent is conclusively presumed in New Mexico from the doing of a prohibited act, and (4) the refusal of the requested instructions denied defendant the right to put on a defense. The argument is patently meritless.

The existence or nonexistence of general criminal intent is a question of fact for the jury. *State v. Roybal,* supra. The general intent instruction submitted the issue to the jury as a question of fact. U.J.I.Crim. 1.50. No presumption was involved in the instruction given. As to conclusive presumptions in New Mexico, see Evidence Rule 303; *State v. Matamoros,* 89 N.M. 125, 547 P.2d 1167 (Ct.App.1976); *State v. Jones,* 88 N.M. 110, 537 P.2d 1006 (Ct.App.1975).

### Elements of Criminal Sexual Penetration

■ Defendant was convicted of criminal sexual penetration in the second degree (Count X). Section 40A–9–21, supra. The statute defines the crime in terms of sexual penetration with a person "other than one's spouse". This is an essential element of the crime as defined by the Legislature; this element was not included in the instructions of the trial court. Compare, *State v. Jimenez,* 89 N.M. 652, 556 P.2d 60 (Ct.App.), decided September 28, 1976.

■ The State says omission of this element was not error because, at the beginning of the trial, the court read the indictment to the jurors and this element was included in the indictment. The record shows the indictment was read to prospective jurors, however, we do not concern ourselves with this factual variation.

The trial court instructed the jury in accordance with U.J.I.Crim. 50.00. This instruction states: "The law governing this case is contained in these instructions . . . ." The indictment was not contained within the instructions given. Even if it had been, instructing the jury by reference to the indictment is improper. *State v. McKnight,* 21 N.M. 14, 153 P. 76 (1915); *Territory v. Baca,* 11 N.M. 559, 71 P. 460 (1903); Compare, *Haynes v. Hockenhull,* 74 N.M. 329, 393 P.2d 444 (1964).

■ The State contends omission of an element of the crime was harmless error because the evidence is undisputed that the victim was not the defendant's spouse. R.Crim.P. 41 requires the court to instruct upon all questions of law necessary for guidance in returning a verdict. "A jury must be instructed on the essential elements of the crime charged." *State v. Puga,* 85 N.M. 204, 510 P.2d 1075, 1078 (Ct.App.1973). When the jury is not instructed on the essential elements of the crime, it has not been instructed on the law applicable to the crime charged. See *Territory v. Baca,* supra. Such an error is fundamental because the error is jurisdictional and thus not harmless. See *State v. Gunzelman,* 85 N.M. 295, 512 P.2d 55 (1973); *State v. Walsh,* 81 N.M. 65, 463 P.2d 41 (Ct.App.1969).

### Instruction on Use of a Firearm

Section 40A–29–3.1(A)(1), supra, provides that when a separate finding of fact by the court or jury shows that a firearm was used in the commission of a felony, other than a capital felony, the minimum and maximum terms of imprisonment shall be increased by five years. See *State v. Wilkins,* 88 N.M. 116, 537 P.2d 1012 (Ct.App.1975). A special verdict of the jury found that a firearm was used in the commission of twelve of the fifteen counts.

The trial court submitted the question of use of a firearm to the jury by instructions in accordance with U.J.I. Crim. 50.13, as U.J.I.Crim. 50.13 was worded at the time this case was tried. As then worded, U.J.I. Crim. 50.13 did not instruct the jury that the State must prove beyond a reasonable doubt that the defendant committed the

crimes by use of a firearm. An amendment to U.J.I.Crim. 50.13, effective October 1, 1976, now informs the jury as to the State's burden of proof.

■ Defendant claims that enhanced sentences pursuant to § 40A–29–3.1, supra, should not have been imposed "because the jury did not find beyond a reasonable doubt that defendant used a firearm".

Proof beyond a reasonable doubt "is the traditional burden which our system of criminal justice deems essential." *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 1891, 44 L.Ed.2d 508 (1975). "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Although the decisions apply the "beyond a reasonable doubt" standard to factual determinations of guilt, the standard also applies to the factual determination that a firearm was used because that fact is a predicate for enhancing defendant's sentence.

■ The State contends that the jury was instructed that the proof of use of a firearm must be beyond a reasonable doubt. It points out that the instructions submitting the issue of guilt included U.J.I.Crim. 40.60 which informed the jury as to the State's burden of proof. The State points out that one general instruction on reasonable doubt is sufficient. *State v. Burrus*, 38 N.M. 462, 35 P.2d 285 (1934); *State v. Roybal*, 33 N.M. 187, 262 P. 929 (1928). These decisions do not provide an answer in this case because of the procedure that was followed. The trial court submitted three issues to the jury—guilty, not guilty and not guilty by reason of insanity. The burden of proof instruction was given in connection with the submission of these issues. The burden of proof instruction, by its wording, was applied to a determination of guilt; no reference was made to use of a firearm. After the guilty verdicts were returned, instructions were given submitting the "use of a firearm" issue to the jury. No burden of proof instruction was given as to this issue. With this procedure, we cannot say that the jury was instructed on the burden of proof concerning use of a firearm.

Although defendant submitted fifty-seven requests for instructions, he did not request an instruction on the burden of proof as to use of a firearm. In addition, defendant did not object to the instructions given. Defendant first raised an issue concerning the burden of proof instruction subsequent to the trial and verdicts. Specifically, defendant did not raise the issue in a timely manner as provided by R.Crim.P. 41(d).

*State v. Henderson*, 81 N.M. 270, 466 P.2d 116, 118 (Ct.App.1970) states that "[i]t is error to fail to instruct the jury on this *presumption of innocence*, if defendant requests an instruction thereon." *State v. Jones*, supra, held that constitutional error in instructions concerning presumptions did *not amount to reversible error* when the issue had not been timely raised.

■ R.Crim.P. 41(d), *State v. Henderson*, supra, and *State v. Jones*, supra, are to the effect that the failure to instruct on the burden of proof as to use of a firearm was not reversible error under New Mexico law because the issue was not timely raised.

Defendant ignores New Mexico law; he claims the error was a violation of federal due process and amounted to jurisdictional error which can be raised at any time. The two decisions relied on do not support defendant. *In re Winship*, supra, holds that proof beyond a reasonable doubt is a constitutional requirement, but does not discuss the procedural problem of when the issue must be raised. *Mullaney v. Wilbur*, supra, affirms that proof beyond a reasonable doubt is required "when the issue is properly presented." The concurring opinion in *Mullaney* points out that no objection had been made to the trial court instruction in that case. A footnote to the concurring opinion attaches significance to the absence of an "objection or exception which might prevent the error from ever occurring."

*Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) involved a

post-conviction attack on the grand jury that returned the indictment. The petitioner, a black, claimed that the trial court had acquiesced in the systematic exclusion of qualified blacks as jurymen. In affirming the trial court's denial of post-conviction relief, *Davis*, supra, applied a federal procedural rule to the effect that the claim was waived if not raised by pretrial motion and held no cause had been shown relieving petitioner from the waiver.

In this case, not only was no issue timely raised concerning the absence of a burden of proof instruction in connection with use of a firearm, the record suggests that defendant acquiesced in the procedure followed. After the instructions were settled in chambers, court was convened "for the purpose of putting the objections to the instructions on the record." The court stated: "[B]oth sides have stipulated that the appropriate time in this case to submit instructions in reference to the firearm would be after the jury returned a verdict because if they find Defendant not guilty or not guilty by reason of insanity, there is no need to do that. I am proposing that if they convict the Defendant, *we will give them the instruction on the enhancement, on the firearm statute*, and let them make their finding . . . ." (Our emphasis.) Defense counsel then thanked the court.

In addition, this is not a case where relevant evidence is lacking on a crucial element of the offense. See *Vachon v. New Hampshire*, 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974). The evidence is substantial, in fact almost uncontradicted, that a firearm was used as to each of the counts on which the jury returned an affirmative verdict.

■ Summarizing: The cases relied on by defendant do not support his contention; the concurring opinion in *Mullaney v. Wilbur*, supra, suggests defendant should have objected to the absence of an instruction; *Davis v. United States*, supra, applied federal procedural rules to bar a constitutional claim not timely raised; defendant did not complain of the absence of an instruction and the record suggests defendant ac-

quiesced in submitting only "use" instructions after a guilty verdict was returned. Accordingly, we hold there was no violation of federal due process because the jury was not instructed that the firearm use must be proved beyond a reasonable doubt.

*The Sentences Imposed*

Defendant claims he has been improperly sentenced; his attack is directed to the enhanced sentence for use of a firearm. We do not agree with defendant's view of the firearm enhancement statute. To reach this result, we are required to interpret the judgment because, as entered, the judgment is ambiguous. The judgment is ambiguous because it does not specify what sentence was imposed for a particular count. The following discussion involves: (1) the trial court's sentencing authority; (2) the meaning of the firearm enhancement statute; and (3) the proper sentence in this case.

■ (1) The trial court's authority to suspend or defer sentence is not involved in this case. Section 40A–29–15, supra. What is involved is the trial court's authority in imposing sentence. Its authority was to sentence defendant to the minimum and maximum provided by law for the particular offense involved. *State v. Romero*, 73 N.M. 109, 385 P.2d 967 (1963); *State v. Hovey*, 87 N.M. 398, 534 P.2d 777 (Ct.App. 1975). Section 40A–29–3, supra, states a minimum and maximum sentence according to the degree of felony involved. In this case we have second, third and fourth degree felonies. The minimum and maximum sentences, stated in § 40A–29–3, supra, are: For second degree—not less than ten nor more than fifty years; for third degree— not less than two nor more than ten years; for fourth degree—not less than one nor more than five years.

■ Section 40A–29–3.1, supra, provides for an enhanced sentence when a firearm was used in the commission of a felony. For felonies other than a capital felony, both the minimum and maximum terms of imprisonment are to be increased by five

244

years. The enhancement provisions are mandatory. *State v. Barreras*, 88 N.M. 52, 536 P.2d 1108 (Ct.App.1975). Thus, when § 40A–29–3.1, supra, is applicable, the sentences to be imposed are: For second degree—not less than fifteen nor more than fifty-five years; for third degree—not less than seven nor more than fifteen years; for fourth degree—not less than six nor more than ten years.

■ The trial court has authority to order that a sentence be served concurrently or consecutively. *Deats v. State*, 84 N.M. 405, 503 P.2d 1183 (Ct.App.1972). Section 40A–29–3.1, supra, made no change in this authority.

(2) The jury found that a firearm was used in twelve of the fifteen counts. The trial court enhanced defendant's sentence on some, but not all of the counts where a firearm was used. Because of the wording of the judgment, we cannot be certain of the counts where the sentence was enhanced. Defendant claims that he "used" a firearm only once, rather than twelve times; he asserts that only one count could properly be enhanced under § 40A–29–3.1, supra. He relies on *People v. Johnson*, 38 Cal.App.3d 1, 112 Cal.Rptr. 834 (1974) and *State v. Ellis*, 88 N.M. 90, 537 P.2d 698 (Ct.App.1975).

*People v. Johnson*, supra, held that under California's firearm enhancement statute, there could be only one enhancement for use of a firearm although defendant had committed three crimes. In the opinion of the California court, "defendant indulged in a single 'use' in the course of the liquor store holdup" where he committed three crimes. We disagree with this reasoning. *If the statute punishes for "use" of a firearm in committing a felony, the punishment is to be applied for each felony committed by using a firearm.*

■ Two other reasons were stated in *People v. Johnson*, supra, as justification for limiting the firearm enhancement to only one of the three crimes committed. One reason was a statute prohibiting multiple sentences based upon a single criminal transaction. New Mexico has no such statute and has rejected the "single transaction" concept. See *State v. Tanton*, 88 N.M. 333, 540 P.2d 813 (1975). A second reason was that the California statute was based on a theory of deterrence because the enhanced penalty increased with successive convictions. New Mexico's statute is worded differently; enhancement is required for "any felony" where a firearm was used, other than a capital felony. *People v. Johnson*, supra, is not applicable.

*State v. Ellis*, supra, involved the meaning of "second or subsequent felony" in the firearm enhancement statute as it existed prior to its amendment by Laws 1975, ch. 138. The amendment made substantial changes in the statute. The amended statute applies in this case. As amended, § 40A–29–3.1, supra, reads:

"A. When a separate finding of fact by the court or jury shows that a firearm was used in the commission of:

"(1) any felony except a capital felony, the minimum and maximum terms of imprisonment prescribed by the Criminal Code shall each be increased by five [5] years; and

"(2) for any crime constituting a felony other than a capital felony, the court shall not suspend the first one [1] year of any sentence imposed.

"B. For second and subsequent felonies other than a capital felony in which a firearm is used, the minimum and maximum terms of imprisonment prescribed by the Criminal Code shall be increased by five [5] years and the court shall not suspend or defer all or any part of the sentence nor shall parole be considered unless the minimum sentence has been served.

"C. If the case is tried by a jury and if a prima facie case has been established showing that a firearm was used in the commission of the offense, the court shall submit the issue to the jury by special interrogatory."

The statute involved in *State v. Ellis*, supra, did not apply to "any felony". The present statute does not distinguish be-

tween "any felony" and "second and subsequent felonies" when it provides that minimum and maximum sentences are to be increased by five years. The distinction between "any felony" and "second and subsequent felonies" in the present statute involves suspended and deferred sentences and parole. *State v. Ellis,* supra, would be applicable to such a situation, but that situation is not involved in this case. Because the statute has been amended, *State v. Ellis,* supra, is not authority for holding that only one firearm enhancement may be imposed in this case.

■ Excepting capital felonies, § 40A–29–3.1, supra, provides for a five-year enhancement of minimum and maximum sentences for "any felony" and for "second and subsequent felonies". If, under *State v. Ellis,* supra, eleven of the twelve crimes committed by use of a firearm should be construed not to be second or subsequent felonies, they nevertheless are "any felonies"; the enhancement provisions are applicable to each count where a firearm was used.

(3) Defendant was sentenced to a term of not less than seventy and not more than two hundred seventy years computed as follows:

"*Counts I & III* to run concurrently with each other for a total of 15 to 55 years but consecutively to all other counts.

"*Counts II & IV* to run concurrently with each other for a total of 15 to 55 years but consecutively to all other counts.

"*Counts V thru VIII* to run concurrently with each other for a total of 15 to 55 years but consecutively to all other counts.

"*Counts IX & XI thru XV* to run concurrently with each other for a total of 15 to 55 years but consecutively to all other counts.

"*Count X* 10 to 50 years to run consecutively to all other counts."

■ Counts I and III were second degree felonies; a firearm was used in each felony. We interpret the trial court's disposition of Counts I and III as separate sentences of not less than 15 nor more than 55 years, to be served concurrently, but consecutive to other sentences. So interpreted, the sentences on these counts are legally correct.

Counts II and IV were also second degree felonies; a firearm was used in each felony. Applying the same reasoning used as to Counts I and III, the sentences for Counts II and IV, of not less than 15 nor more than 55 years, to be served concurrently, but consecutive to other sentences, are legally correct.

■ Count V was a third degree felony; a firearm was used. Count VI was a third degree felony; a firearm was used. Count VII was a fourth degree felony; a firearm was used. Count VIII was a second degree felony; a firearm was used. The total sentences for these four counts would have been not less than 35 nor more than 95 years; however, the trial court could properly order that the sentences on Counts V, VI and VII be served concurrently with Count VIII. So interpreting the judgment, the sentence of not less than 15 nor more than 55 years on these four counts is legally incorrect. Concurrent sentences of not less than 15 nor more than 55 years for each of Counts V, VI and VII exceed the sentence authorized by law for third and fourth degree felonies. *State v. Lucero,* 48 N.M. 294, 150 P.2d 119 (1944). If we do not interpret the judgment as imposing concurrent sentences on Counts V, VI and VII, then no sentence has been imposed on these counts. The sentence on Count VIII is legally correct.

■ Count IX was a second degree felony; a firearm was used. Count XI was a fourth degree felony; a firearm was *not* used. Count XII was a second degree felony; a firearm was used. Count XIII was a second degree felony; a firearm was used. Count XIV was a misdemeanor; even though a firearm was *not* used, § 40A–29–3.1, supra, is not applicable. Count XV was a second degree felony; a firearm was used. The sentences on these six counts would

have totalled not less than sixty-one nor more than two hundred twenty-five years, plus a sentence for a definite term of less than one year for the misdemeanor. Section 40A–29–4(A), supra. However, the trial court could properly order that the sentences on Counts IX, XI, XII, XIII and XIV be served concurrently with Count XV. So interpreting the judgment, the sentence of not less than 15 nor more than 55 years, on these six counts, to be served consecutively to the sentences on other counts, is legally incorrect as to Counts XI and XIV because a 15 to 55 year sentence is not authorized for a fourth degree felony or a misdemeanor. *State v. Lucero,* supra. The sentences on Counts IX, XII, XIII and XV are legally correct.

The sentence on Count X, where a firearm was not used, is to be set aside for failure to instruct on an essential element of the crime.

The conviction and sentences on Counts I, II, III, IV, VIII, IX, XII, XIII and XV are legally correct and are affirmed. The total of these sentences, under the trial court's grouping of concurrent and consecutive sentences amounts to not less than 60 nor more than 220 years.

The convictions on Counts V, VI, VII, XI and XIV are affirmed. The sentences as to these five counts are legally incorrect and are set aside. The trial court is instructed to impose a legally correct sentence as to these counts.

The conviction on Count X is reversed and a new trial is ordered as to that count.

The case is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.